UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-00775-FWS-MAR Date: August 26, 2026
Title: Ashok Kumar v. Fereti Semaia *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Rolls Royce Paschal | N/A |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**PROCEEDINGS: (IN CHAMBERS) ORDER REJECTING REPORT AND RECOMMENDATION [26]; DISMISSING PETITION**

Petitioner Ashok Kumar filed this Petition for Writ of Habeas Corpus against Respondents Fereti Semaia, the Warden of the Immigration and Customs Enforcement ("ICE") Adelanto Detention Center; Todd Lyons, the Acting Director of ICE; Kristi Noem, the former Secretary of the Department of Homeland Security; and Pamela Bondi, the former Attorney General of the United States. (Dkt. 1 ("Petition" or "Pet.").) At this stage of the case, Petitioner contends that "Petitioner's continued detention violates due process" because, at the bond hearing Petitioner received, the government "did not present clear and convincing evidence that Petitioner would flee if released, nor did it establish that alternatives to detention would be ineffective." (Dkt. 23.) Now before the court is the Magistrate Judge's July 31, 2026 Report and Recommendation, which recommends the court grant the Petition and, among other relief, direct Respondents to release Petitioner subject to previously imposed conditions. (Dkt. 26 ("Report and Recommendation") at 20-21.) Respondents filed Objections to the Report and Recommendation. (Dkt. 27 ("Obj.").) Based on the record, as applied to the relevant law, and on *de novo* review, *see* 28 U.S.C. § 636(b)(1)(C), the court **REJECTS** the Report and Recommendation and **DISMISSES WITHOUT PREJUDICE** the Petition.

## I. Background

Petitioner "is an asylum seeker who fled India" and "arrived in the U.S. on or about May 16, 2023," where he "was encountered and apprehended by Customs and Border Protection inside the United States" and "released from custody on his own recognizance under 8 U.S.C. 1226(a)." (Pet. ¶ 2.) "Then, on or around July 9, 2025, he was redetained despite no material

change in circumstances and no advance notice or hearing to determine if he poses a flight risk or is a danger." (*Id.*) Petitioner was subsequently "transferred to the Adelanto ICE Processing Center." (*Id.* ¶ 4.)

Petitioner alleges that his detention was unlawful based on a July 2025 DHS policy. (*See id.* ¶ 45.) "A recent DHS policy . . . considers anyone arrested within the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) to be an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." *Mosqueda v. Noem*, 2025 WL 2591530, at *1 (C.D. Cal. Sept. 8, 2025). "Pursuant to section 1225(b)(2)(A) 'applicants for admission' who are 'seeking admission' are subject to mandatory detention." *Id.* "Prior to the new policy, foreign nationals, like petitioner[], who were charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled were considered detained pursuant to 8 U.S.C. § 1226(a), which allows for release on bond or conditional parole." *Id.*

On March 2, 2026, the court granted in substantial part Petitioner's Motion for Temporary Restraining Order, enjoining Respondents "from continuing to detain Petitioner unless Petitioner is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) on or before March 9, 2026, at 5:00 p.m." (Dkt. 10 ("TRO") at 5 (emphasis removed).)

"Petitioner was scheduled for a bond hearing in compliance with the" TRO, but "Petitioner withdrew his bond request at the hearing." (Dkt. 12 (OSC Response) at 2; Dkt. 12-3 (Order of the Immigration Judge).) Based on the state of the record at that time, the court denied Petitioner's request for a preliminary injunction, and referred further proceedings on the merits of the Petition to the assigned Magistrate Judge for decision. (Dkt. 14 at 1-2.)

On April 22, 2026, Petitioner was provided another bond hearing, at which, as Petitioner describes, "DHS bore the burden of proving by clear and convincing evidence that Petitioner's continued detention was necessary because no amount of bond or alternative conditions of release could reasonably assure his appearance at future proceedings." (Dkt. 23 at 2.) "[T]he Immigration Judge ultimately concluded that Petitioner posed a significant flight risk," and denied bond. (*Id.*) However, Petitioner argues "the evidence presented by DHS was

insufficient to satisfy this heightened constitutional standard." (*Id.*) In particular, Petitioner argues:

> DHS primarily relied on Form I-213, alleged inconsistencies concerning Petitioner's residential addresses, questions regarding the filing of an EOIR-33 change-of-address forms [to be filed by his immigration attorney mostly], discrepancies relating to the sponsor's tax returns and residence, and the fact that Petitioner is subject to a final order of removal. However, none of these allegations demonstrate that Petitioner is likely to abscond if released. At most, they reflect administrative inconsistencies that do not constitute clear and convincing evidence of an intent to evade immigration authorities.
>
> By contrast, the record contained substantial evidence demonstrating Petitioner's reliability and compliance with government supervision. Before his detention, Petitioner lived openly in the community for a significant period of time, maintained full-time employment, complied with all laws, and consistently reported to ICE whenever required. There is no evidence that Petitioner failed to appear for any immigration proceeding, missed a required ICE appointment, or otherwise attempted to evade government supervision. Such conduct is fundamentally inconsistent with the conclusion that Petitioner presents an unmanageable flight risk.
>
> Moreover, DHS failed to present evidence explaining why less restrictive alternatives to detention would be inadequate. The government offered no meaningful analysis regarding the effectiveness of a monetary bond, regular reporting requirements, electronic monitoring, or other conditions of supervision. Instead, DHS relied largely on speculative concerns arising from address-related discrepancies and the existence of a final order of removal. Due process requires more. The government's burden is not merely to identify potential concerns but to establish by clear and convincing evidence

> that no condition or combination of conditions can reasonably assure Petitioner's appearance.
>
> The government's reliance on Petitioner's final order of removal is particularly unpersuasive in light of Petitioner's demonstrated history of compliance and timely filing of appeal. A final order alone does not establish flight risk. If it did, every noncitizen with a final order would automatically be subject to detention regardless of individual circumstances. The Constitution requires an individualized determination based on evidence, and Petitioner's years of compliance with ICE reporting requirements, lawful conduct, and community ties strongly undermine any inference that he would abscond if released.
>
> Accordingly, the bond hearing failed to provide the meaningful constitutional safeguard required in prolonged detention cases. DHS did not present clear and convincing evidence that Petitioner would flee if released, nor did it establish that alternatives to detention would be ineffective. Because the government's evidence fell short of the constitutionally required standard, Petitioner's continued detention violates due process.

(*Id.* at 2-3.)

## II. Legal Standards and Analysis

As stated, at this stage of the case, Petitioner's core contention is that the IJ's determination at the bond hearing was wrong because the government's evidence did not meet its burden of proof. (Dkt. 23.) This contention—which is based on events that took place after the Petition—does not appear in the Petition. (*See generally* Petition; *see* Obj. at 8-10.) And even if Petitioner were to file some amended pleading including these additional facts, the court would find it lacked jurisdiction to review the amended pleading, or alternatively would not exercise any jurisdiction it might have to decide the amended pleading because Petitioner has not exhausted his administrative remedies.

To review, the court found persuasive at the TRO stage Petitioner's contention that he should have been treated as detained pursuant to Section 1226(a), which allows for release on bond or conditional parole. *See Mosqueda*, 2025 WL 2591530, at *1. Section 1226(e), titled "judicial review," provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

In other words, "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citation modified).

"Although Petitioner may disagree with the outcome of the IJ's determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue" under 8 U.S.C. § 1226(e). *Valenzuela v. Semaia*, 2025 WL 4041920, at *2 (C.D. Cal. Dec. 10, 2025). "Petitioner's requested relief now seeks this Court reconsider and re-evaluate the evidence . . . that caused the IJ to deny him bond," and to review Petitioner's "arguments as to why the IJ's analysis . . . was incorrect." *Id.* However, "Congress has explicitly divested courts of jurisdiction to hear pre-removal period bond challenges." *Id.* (internal quotation omitted). Because "Petitioner seeks review of the merits of the IJ's decision," the court lacks subject matter jurisdiction. *Id.*

It is true that "§ 1226(e) did not strip federal courts of traditional habeas jurisdiction"; it "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law." *Martinez v. Clark*, 124 F.4th 775, 781-82 (9th Cir. 2024). In other words, "[a]lthough the IJ's discretionary bond determination [is] not reviewable in federal court, *see* 8 U.S.C. § 1226(e), [courts] have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [an immigrant's] agency proceedings, including any claimed due process violation." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *overruled on other grounds by Rodriguez Diaz*, 53 F.4th at 1209 ("Although § 1226(e) restricts

jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."); *see, e.g.*, *Martinez*, 124 F.4th at 784 (finding IJ's "'dangerousness' determination . . . is reviewable . . . for an abuse of discretion"). But Petitioner's claim as presently presented is not a due process claim; it "is merely a disagreement with the merits of the IJ's decision, which [the court] lack[s] jurisdiction to review." *Rodriguez Diaz*, 53 F.4th at 1212–13.

Even if Petitioner's present claim could be construed as one over which the court has jurisdiction, the court would find exercising that jurisdiction inappropriate because Petitioner has not exhausted his administrative remedies by appealing the IJ's bond determination to the BIA. "Section 2241, the statute under which [Petitioner] filed his habeas petition, does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). "Nonetheless, [courts] require, as a prudential matter, that habeas petitioners exhaust available judicial remedies before seeking relief under § 2241." *Id.* (citation modified); *see also Singh*, 638 F.3d at 1203 n.3 ("On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement."). "Prudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales,* 548 U.S. 30 (2006).

"Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation omitted).

Regarding the first *Puga* factor, the BIA has expertise on the issues that would be presented in any amended petition and would be "[t]he appropriate body to first pass on the claims in order to generate a proper record for review." *Puga*, 488 F.3d at 815 (citing *Liu v. Waters,* 55 F.3d 421, 426 (9th Cir. 1995) ("[T]he BIA does have the authority to reopen cases to fix administratively correctable procedural errors, even when these errors are failures to follow due process.")); *see Martinez v. Scott*, 2025 WL 2689844, at **4-5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted,* 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025)

("This Court has consistently recognized that the BIA has subject-matter expertise for individual immigration bond decisions and the authority to review appeals of such decisions by IJ's. . . . In light of the BIA's subject-matter expertise and its ability to provide a more complete record for review of Petitioner's claims, the Court concludes the first *Puga* factor weighs in favor of exhaustion.").

Regarding the second *Puga* factor, "[p]ermitting [Petitioner] to present his [] claim [regarding the government's alleged failure to meet its burden of proof at the bond hearing] for the first time before the district court would allow him to bypass the administrative scheme that is in place to deal with claims such as [Petitioner's]." *Puga*, 488 F.3d at 815. Here is how it usually works: "[A]liens who are held in custody under 8 U.S.C. § 1226(a), while their petitions for review of their removal orders are pending, are entitled to a bond hearing before an immigration judge. If they are dissatisfied with the IJ's bond determination, they may file an administrative appeal so that the necessity of detention can be reviewed by the BIA. If they remain dissatisfied, they may file a petition for habeas corpus in the district court." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

And regarding the third *Puga* factor, allowing the BIA to consider an appeal will give the agency an opportunity to correct any mistakes in comparing the government's showing with the burden of proof applied at Petitioner's bond hearing and potentially preclude the need for judicial review. *Puga*, 488 F.3d at 815; *Martinez*, 2025 WL 2689844, at *5.

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160. Regarding excusing exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (internal quotation omitted).

Here, the court does not find any sufficient reason or reasons in the record to waive the exhaustion requirement. *See Laing*, 370 F.3d at 1001 ("Here, however, we find no indication in the record, or the briefs, of any reason to waive the exhaustion requirement."); *Pinto-Nunez v.*

*Warden*, 2026 WL 1031033, at *2 (E.D. Cal. Apr. 16, 2026) ("The undersigned finds that analysis of the *Puga* factors does not support waiver of the exhaustion requirement, as relaxation of the requirement may encourage bypass of the administrative scheme and administrative review may allow correction of mistakes and generation of a proper record, as well as preclude the need for judicial review."); *Nagiyev v. Warden, Otay Mesa Det. Ctr.*, 2026 WL 945965, at *2 (S.D. Cal. Apr. 7, 2026) ("The Court follows other courts in this District and declines to waive the exhaustion requirement. Therefore, Petitioner has failed to exhaust his administrative remedies, and the present challenge is improper."); *Fernandes v. Warden*, 2026 WL 1005075, at *2 (S.D. Cal. Apr. 14, 2026) (same); *Hekmat v. Imperial Regional Detention Facility*, 2026 WL 1027741, at *3 (S.D. Cal. Apr. 15, 2026) ("Petitioner in this case has failed to exhaust his administrative remedies. He had the option to appeal his bond denial to the BIA and has failed to do so. . . . Thus, the Court finds appeal to the BIA is a necessary prerequisite in this case before it may consider any error on the part of the Immigration Judge."); *Kithima v. Albarran*, 2026 WL 1078236, at *3 (E.D. Cal. Apr. 21, 2026) (report and recommendation submitted to district judge stating, "I agree with the analysis in *Martinez* and find that petitioner has not established that her administrative remedies are inadequate or not efficacious. Petitioner therefore has not demonstrated that the court should waive the exhaustion requirement."); *Yu v. Noem*, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026) (report and recommendation submitted to district judge stating, "The undersigned finds that exhaustion of administrative remedies is required in this case and that petitioner has failed to establish any valid exception to the exhaustion requirement."); *see also Siyad v. Noem*, 2026 WL 1078174, at *6 (S.D. Ohio Apr. 21, 2026) ("While some district courts in this circuit have chosen to waive exhaustion due to the delay caused by a potentially lengthy appeal process, such a decision remains in the Court's discretion.").

In summary, the court finds the court lacks jurisdiction to decide Petitioner's current claim, both because it does not appear in the Petition, and because even if it appeared in some amended petition, the court would lack jurisdiction to sit as an appellate body over the IJ's bond decision. *See Rodriguez Diaz*, 53 F.4th at 1212–13; *Valenzuela*, 2025 WL 4041920, at *2. Even if the court had jurisdiction to decide Petitioner's current claim in some amended pleading, the court would find Petitioner failed to exhaust his administrative remedies and excusing that failure is not appropriate. *See Puga*, 488 F.3d 812, 816 ("Consequently, because Gama Puga could, and should have, exhausted his ineffective assistance of counsel claim by filing a timely motion to reopen with the BIA when he retained new counsel, his habeas petition

was not properly before the district court."); *Laing*, 370 F.3d at 1000 ("Indeed, the district court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available."); *Castro-Cortez*, 239 F.3d at 1047 ("The district court was not authorized to hear these petitions under § 2241, because direct review was available."); *Leonardo*, 646 F.3d at 1160 ("Here, Leonardo pursued habeas review of the IJ's adverse bond determination before appealing to the BIA. This short cut was improper."). Accordingly, the Petition is **DISMISSED WITHOUT PREJUDICE.** *See Leonardo*, 646 F.3d at 1160.

## III. Disposition

For the foregoing reasons, the Report and Recommendation is **REJECTED**. The Petition is **DISMISSED WITHOUT PREJUDICE.**